UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

National Union Fire Insurance
Company of Pittsburgh, PA,

      Plaintiff,

v.

Viracon, Inc.,

      Defendant.

Civ. No. 16-482 (PAM/SER)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Plaintiff's Motion for Summary Judgment. For the following reasons, the Court grants the Motion in part and denies it in part.

**BACKGROUND**

Defendant Viracon, Inc., is an Owatonna, Minnesota-based company that manufactures architectural glass. Viracon's insulated glass products, called IGUs, are used primarily for the curtain walls of commercial buildings. (Am. Compl. (Docket No. 9) ¶ 1.) Beginning in approximately 2006, Viracon secured comprehensive general liability ("CGL") insurance through Plaintiff National Union Fire Insurance Company of Pittsburgh. (Id. ¶ 73.) From 2006 to 2009, Viracon also had commercial umbrella liability insurance through National Union. (Id. ¶¶ 77, 82.)

Viracon is a named Defendant in two state-court lawsuits relating to its IGUs.[1] These lawsuits involve the InterContinental Hotel in San Francisco (id. Ex. D), and a mixed-use building in Portland, Oregon, owned by a company called 12W (id. Ex. G). The InterContinental lawsuit alleges, among other things, defects in the manufacture and/or performance of the sealants Viracon and others used in manufacturing the IGUs or in attaching the IGUs to their frames. The 12W lawsuit contends that the opacifier film on the IGUs is defective, causing injury to the windows themselves and to property within the building that was exposed to sunlight.

Nation Union accepted the defense of these lawsuits under a reservation of rights and brought this lawsuit seeking declarations regarding its duties toward Viracon. Specifically, Counts V and VI of the Amended Complaint seek a declaration that National Union has no duty to indemnify under the CGL policies and Count VII involves indemnification under the umbrella policies. Viracon then successfully moved to stay the matter pending the outcome of the underlying litigation. (Docket No. 26.)

Trial in the InterContinental lawsuit commenced in March 2017, but the case settled before the jury rendered a verdict. The 12W lawsuit is ongoing and has not yet been set for trial.

---

[1] At the time National Union filed its Complaint, Viracon was a named defendant in three actions and had been threatened with suit in another matter. National Union's obligations with respect to two of those four matters have been resolved and they are no longer at issue. Since National Union filed this action, however, three additional cases have been filed against Viracon. These new lawsuits are not at issue here.

National Union now argues that summary judgment in its favor is appropriate. It contends that the evidence presented in the InterContinental lawsuit establishes that the insurance policies do not provide coverage for the damages claimed in any of the lawsuits. It asks for a declaration that the cost to repair or replace the IGUs is not property damage under the policies and is precluded by policy exclusions in any event, and that therefore National Union has no indemnity obligation for either the InterContinental settlement or the 12W lawsuit.

**DISCUSSION**

**A.     Standard of Review**

General principles of contract interpretation govern the construction of insurance contracts. Lobeck v. State Farm Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998). Words in insurance contacts are "given their natural and ordinary meaning and any ambiguity in coverage is construed in favor of the insured." Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001).

As an initial matter, Viracon argues that National Union should be precluded from arguing that the "your work" exclusion precludes coverage for the damages claimed in the underlying lawsuits, because the Amended Complaint does not mention this exclusion and does not seek any relief regarding this exclusion. In its reply memorandum, National Union asserts that it reserved its rights under this exclusion because the Amended Complaint, ostensibly including "the relevant policy language in [its coverage] letters and cit[ing] the operative 'your work' language in the [Amended] Complaint." (Pl.'s Reply Mem. (Docket No. 42) at 13 n.8.) But National Union does not refer the Court to any

documents in the record or cite to any paragraphs of the Amended Complaint that reference the "your work" exclusion.[2]  The Court has reviewed the record, including the Amended Complaint and the coverage letters attached thereto, and finds no reference to the "your work" exclusion in any documents.  (E.g., Am. Compl. Exs. G, F, H, and I.)  Having failed to include any claim regarding the "your work" exclusion its pleadings, National Union cannot now amend those pleadings by argument.  The Court will not consider the "your work" exclusion in evaluating National Union's Motion.

**B.   Coverage**

Viracon has the burden to establish that the InterContinental settlement encompasses covered claims.  See UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co., 870 F.3d 856, 862 (8th Cir. 2017).  This burden is two-fold:  first Viracon must prove that the claims asserted against it in the InterContinental lawsuit are within the insurance policies' grant of coverage, and then Viracon must establish what portion of the settlement amount is allocated to covered claims.  UnitedHealth Grp. Inc. v. Columbia Cas. Co., 47 F. Supp. 3d 863, 873 (D. Minn. 2014) (Schiltz, J.); see also Exec. Risk, 870 F.3d at 863 (holding that insured "bears the burden to allocate the settlement between the potentially covered [claims] and the non-covered [claims] with enough specificity to permit a reasoned judgment about liability").  To successfully deny coverage for the

---

[2]  Until reminded of its obligation to place the contracts at issue in the record, National Union did not submit the insurance policies to the Court or directly quote from those policies.

settlement, National Union must establish that some or all of the claims fall within one of the policies' exclusions. Columbia Cas., 47 F. Supp. 3d at 874.

### 1. Property Damage

The parties do not dispute the applicable language of the insurance policies at issue. The CGL policies provide that National Union "will pay those sum that [Viracon] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." (Mokshagundam Decl. Ex. J (Docket No. 43-1) § I.A.1.a.) The policy defines "property damage" as: "a. Physical injury to tangible property, including all resulting loss of use of that property . . . ; or b. Loss of use of tangible property that is not physically injured." (Id. § V.17.) The definition of "property damage" in the umbrella policy is the same. (Id. Ex. K (Docket No. 43-2) § VII.Y.1.)

The plaintiff in the InterContinental lawsuit claimed as damages both the cost to repair or replace the defective IGUs and loss-of-use damages because certain floors of the hotel would have to be closed while the repair project was underway. According to National Union, however, the settlement encompassed only repair and replacement costs, not loss-of-use damages, because there was no evidence adduced at trial on loss-of-use damages. Rather than directly take issue with National Union's argument in this regard, Viracon notes only that there was no written settlement agreement and that the InterContinental plaintiff claimed both categories of damages.

Putting aside loss-of-use damages, which the parties seem to agree are "property damage" within the meaning of the policies, the question becomes whether the cost to repair or replace the allegedly defective IGUs fits within the policies' definition of

5

"property damage." National Union contends that Minnesota courts have conclusively determined that "replacement costs related to defective work and materials . . . does not fit within the policy definition of property damage." Thermex Corp. v. Fireman's Fund Ins. Cos., 393 N.W.2d 15, 17 (Minn. Ct. App. 1986). But the Thermex decision is not as straightforward or "seminal" as National Union contends.

The court's discussion of the "property damage" issue in Thermex consists of a single paragraph, and the cursory analysis does little to illuminate the issues underlying this case. And no other Minnesota court decisions have cited Thermex for the proposition that National Union advances here. More relevant to the determination before the Court is a Minnesota Supreme Court case decided a year before Thermex. See Federated Mut. Ins. Co. v. Concrete Units, Inc., 363 N.W.2d 751 (Minn. 1985). As relevant here, the insured in Federated Mutual sought coverage for faulty concrete used to construct a grain elevator. The Federated Mutual court assumed that damage to concrete itself was "property damage" within the meaning of the standard CGL policy, but found that such damage was excluded from coverage by the policy's "your product" exclusion. Id. at 755-57.

Similarly, another panel of the Minnesota Court of Appeals found that damage to a building and to sprinkler-system pipes resulting from a defective sprinkler system was "property damage" for purposes of the sprinkler company's insurance coverage. Sand Cos. v. Gorham Hous. Partners III, LLP, No. A10-113, 2010 WL 5154378, at *4-5 (Minn. Ct. App. Dec. 21, 2010). And even a case on which National Union relies heavily assumed that damage to the insured's product was "property damage," albeit property

6

damage that was otherwise excluded from coverage by other policy provisions. Bright Wood Corp. v. Bankers Standard Ins. Co., 665 N.W.2d 544, 548 (Minn. Ct. App. 2003).

National Union is not entitled to a declaration that damage to Viracon's IGUs is not "property damage" within the meaning of the policies at issue.

### 2. "Your Product" Exclusion

The next question is whether damage to the IGUs is nonetheless excluded from coverage under the "your product" exclusion, which is found both in the CGL policy and the umbrella policy. (Am. Compl. ¶¶ 75, 80.) This exclusion provides that the insurance policy "does not apply" to "Property Damage to Your Product arising out of it or any part of it." (Mokshagundam Decl. Ex. K §§ V.F.) "Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed[,] or disposed of by . . . [y]ou." (Id. § VII.DD.1.a.)

Viracon contends that the "your product" exclusion does not apply here, because the IGUs are "real property" for purposes of the insurance policies. "'Real property' is generally defined as '[l]and and anything growing on, attached to, or erected on it . . . . Real property can be either corporeal (soil and buildings) or incorporeal (easements).'" Wanzek Const. Inc. v. Emp'rs Ins. of Wasau, 679 N.W.2d 322, 327 (Minn. 2004) (alteration in original) (quoting Black's Law Dictionary 1234 (7th ed. 1999)). In Wanzek, the Minnesota Supreme Court determined that coping stones surrounding a swimming pool were "real property" excepted from the "your product" exclusion. Id. Viracon relies on Wanzek for its assertion that, because the IGUs are attached to buildings, they are "real property" for purposes of the "your product" exclusion.

7

But in Bright Wood, the court found that damage to the insured window manufacturer's windows was excluded from coverage under a similar product exclusion. 665 N.W.2d at 548-49. The court did not specifically address the "real property" exception to this exclusion, but presumably would have done so had it believed that the exception precluded the application of the exclusion to items such as building materials. And the Bright Wood court cited with approval a Wisconsin decision determining that the "your product" exclusion applied to defective masonry in a home. Id. at 548 (citing Jacob v. Russo Builders, 592 N.W.2d 271\, 277 (Wis. Ct. App. 1999)). The mere fact that Viracon's IGUs are attached to a building does not render them "real property" for purposes of the "your product" exclusion.

The IGUs are not "real property" and thus are subject to the "your product" exclusion. Any costs of repairing the IGUs or their component parts is therefore excluded from coverage.

### 3. Settlement

The Court cannot, however, determine on this record whether and to what extent the amount Viracon paid to settle the InterContinental lawsuit is excluded from coverage by the "your product" exclusion. There is no evidence before the Court on the terms of the settlement. Viracon must establish what portion of the settlement is attributable to covered claims, and until that showing is made, no declaration regarding the settlement is appropriate.

Similarly, because the 12W litigation is ongoing, the Court cannot determine whether Viracon's liability in that litigation is covered by National Union's policies.

### C. Declaratory Judgment

As discussed, the claims for damage to Viracon's IGUs in the underlying lawsuits constitute "property damage" within the meaning of the National Union policies. Those claims, however, are excluded from coverage by the "your product" exclusion. Any declaration regarding indemnity for the InterContinental settlement or the 12W litigation must await further record development.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

1. National Union's Motion for Summary Judgment (Docket No. 35) is **GRANTED in part** and **DENIED in part**; and

2. The costs to repair and replace Viracon, Inc's insulating or insulated glass units ("IGUs") are precluded by the "your product" exclusion in the applicable policies.

Dated:  June 18, 2018

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge